# UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| CONNIE KING, | Case No.: 4:14-cv-00333-REB |
| Petitioner, | **MEMORANDUM DECISION AND ORDER** |
| vs. | |
| CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration, | |
| Respondent. | |

Pending before this Court is Petitioner Connie King's Petition for Review, seeking review of the Social Security Administration's denial of disability insurance benefits. *See* Pet. for Review, p. 1 (Docket No. 1). This action is brought pursuant to 42 U.S.C. § 405(g). Having carefully reviewed the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## I. ADMINISTRATIVE PROCEEDINGS

On or around October 19, 201, Connie King ("Petitioner") protectively filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning August 14, 2008. This claim was initially denied on January 21, 2011 and, again, on reconsideration on June 6, 2011. On July 9, 2011, Petitioner timely filed a Request for Hearing before an Administrative Law Judge ("ALJ"). On April 10, 2013, ALJ Robin L. Henrie held a hearing at which time Petitioner, represented by attorney Josh Decker, appeared and testified. An impartial vocational expert, Kent Granat, also appeared and testified.

**MEMORANDUM DECISION AND ORDER - 1**

On April 26, 2013, the ALJ issued a Decision denying Petitioner's claim, finding that Petitioner was not disabled within the meaning of the Social Security Act.  Petitioner timely requested review from the Appeals Council on May 14, 2013.  On May 29, 2014, the Appeals Council denied Petitioner's Request for Review, making the ALJ's decision the final decision of the Commissioner of Social Security.

Having exhausted her administrative remedies, Petitioner timely files the instant action, arguing that "[t]he decision of the [ALJ] and Appeals Council are not supported by substantial evidence, and they did not consider crucial evidence submitted in a timely fashion with regard to the claimant's impairments."  Pet. for Review, p. 3 (Docket No. 1); *see also id.* at p. 5 ("The conclusions of law made by the [ALJ] and the Appeals Council that Plaintiff was not under a disability are incorrect and contrary to the law and regulations of the Social Security Act."). Specifically, Petitioner argues that the ALJ (1) failed to properly analyze the testimony of the impartial vocational expert, and (2) failed to assign appropriate weight to the opinions of her treating physicians.  *See* Pet.'s Brief, p. 2 (Docket No. 15).  Petitioner therefore requests that the Court either reverse the ALJ's decision and find that she is entitled to disability benefits or, alternatively, remand the case for further proceedings and award attorneys' fees.  *See* Pet. for Review, p. 5 (Docket No. 1).

## II.  STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards.  42 U.S.C. § 405(g); *Matney ex. rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990). Findings as to any question of fact, if supported by substantial evidence, are conclusive.  42

**MEMORANDUM DECISION AND ORDER - 2**

U.S.C. § 405(g). In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

"Substantial evidence" is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The standard requires more than a scintilla but less than a preponderance (*see Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019. The ALJ is responsible for determining credibility and resolving conflicts in medical testimony (*see Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984)), resolving ambiguities (*see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984)), and drawing inferences logically flowing from the evidence (*see Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)). Where the evidence is susceptible to more than one rational interpretation in a disability proceeding, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error. *Matney*, 981 F.2d at 1019. The ALJ's

**MEMORANDUM DECISION AND ORDER - 3**

construction of the Social Security Act is entitled to deference if it has a reasonable basis in law. *See id.* However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

## III.  DISCUSSION

### A.    Sequential Process

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (*see* 20 C.F.R. §§ 404.1520, 416.920) – or continues to be disabled (*see* 20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant has engaged in SGA, disability benefits are denied, regardless of how severe her physical/mental impairments are and regardless of her age, education, and work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in SGA, the analysis proceeds to the second step. Here, the ALJ found that Petitioner did not engage in substantial gainful activity between her alleged onset date of August 14, 2008 through her date last insured of September 30, 2012. (AR 21).

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration

**MEMORANDUM DECISION AND ORDER - 4**

requirement.  20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  An impairment or combination

of impairments is "severe" within the meaning of the Social Security Act if it significantly limits

an individual's ability to perform basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).

An impairment or combination of impairments is "not severe" when medical and other evidence

establish only a slight abnormality or a combination of slight abnormalities that would have no

more than a minimal effect on an individual's ability to work.  20 C.F.R. §§ 404.1521, 416.921.

If the claimant does not have a severe medically determinable impairment or combination of

impairments, disability benefits are denied.  20 C.F.R. §§ 404.1520(c), 416.920(c).  Here, the

ALJ found that, through the date last insured, Petitioner had the following severe impairments:

"obesity, right elbow fracture with subsequent surgery and residuals, disorders of the back,

affective mood disorder, including depression, bipolar disorder, and general anxiety disorder."

(AR 21).

    The third step requires the ALJ to determine the medical severity of any impairments;

that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R.

Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the

answer is yes, the claimant is considered disabled under the Social Security Act and benefits are

awarded.  20 C.F.R. §§ 404.1520(d), 416.920(d).  If the claimant's impairments neither meet nor

equal one of the listed impairments, the claimant's case cannot be resolved at step three and the

evaluation proceeds to step four.  *Id*.  Here, the ALJ concluded that, through the date last insured,

Petitioner's above-listed impairments, while severe, did not meet or medically equal, either

singly or in combination, the criteria established for any of the qualifying impairments.  (AR 22-

24).

**MEMORANDUM DECISION AND ORDER - 5**

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity ("RFC") is sufficient for the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. 20 C.F.R. §§ 404.1545, 416.945. Likewise, an individual's past relevant work is work performed within the last 15 years or 15 years prior to the date that disability must be established; also, the work must have lasted long enough for the claimant to learn to do the job and be engaged in substantial gainful activity. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. Here, the ALJ determined that, from the alleged onset date to the date of the April 26, 2013 decision, Petitioner had the residual functional capacity to perform a full range of sedentary unskilled work, **"but such work could not have required:"** (1) lifting more than 5 to 8.5 pounds at a time, on more than an 'occasional' bases; (2) lifting and carrying articles weighing more than 5 to 8.5 pounds, on more than an 'occasional' basis; (3) standing or walking more than 15 to 20 minutes at one time, nor more than 2 total hours in an 8 hour work day; (4) sitting more than 15 to 20 minutes at one time, nor more than 6 total hours in an 8 hour work day;[1] (5) more than occasional stooping, bending, twisting, or squatting; (6) work on the floor (e.g., no kneeling, crawling, or crouching); (7) ascending or descending full flights of stairs (but a few stair steps up or down not precluded); (8) overhead lifting or overhead reaching; (9) more than occasional reaching with right upper extremity, occasional handling with right upper extremity, and occasional fingering with right upper extremity, or any duties requiring feeling with the right

---

[1] Additionally, regarding the standing/walking and sitting limitation, the ALJ noted Petitioner's need "to be as comfortable as possible," requiring "the option to make the postural changes noted above (the "sit/stand" option), thus there must be an option to perform work duties while standing/walking or sitting, due to the need for these postural changes." (AR 24).

**MEMORANDUM DECISION AND ORDER - 6**

upper extremity (noting right elbow severe impairment and left upper extremity is normal); (10) more than occasional twisting activities with the right hand; (11) work at more than a low stress level; (12) work at more than a low concentration level; (13) work at more than a low memory level; and (14) more than occasional twisting of right upper extremity.  (AR 24-32) (emphasis in original).

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of her impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993).  If the claimant is able to do other work, she is not disabled; if the claimant is not able to do other work and meets the duration requirement, she is disabled.  Here, the ALJ found that, through the date last insured, Petitioner was unable to perform any past relevant work.  (AR 32). However, the ALJ further found that, through the date last insured, there are jobs that exist in significant numbers in the national economy that Petitioner can perform, including dowel inspector (assembly), washroom operator, and brimer.  (AR 33).  Therefore, based on Petitioner's age, education, work experience, and residual functional capacity, the ALJ concluded that Petitioner "was not under a disability . . . at any time from August 1, 2008, the alleged onset date, through September 30, 2012, the date last insured.  (AR 34).

**B.    The ALJ Properly Credited the Impartial Vocational Expert's Testimony Regarding a Sit/Stand Option**

Pursuant to step four of the sequential process, the ALJ determined that Petitioner must be given the option to alternate between sitting and standing (a "sit/stand" option) as needed in

**MEMORANDUM DECISION AND ORDER - 7**

up to 20-minute increments at any job she performs. *See supra*. Even with this limitation, at

step five of the sequential process, the ALJ determined that Petitioner could perform certain

unskilled sedentary work, based on the testimony of the impartial vocational expert, Kent

Granat, who opined that such work would include a sit/stand option. *See supra* (citing (AR 33-

34)). Petitioner now argues that such testimony conflicts with the Dictionary of Occupation

Titles ("DOT") and that Mr. Granat failed to provide sufficient support to justify his conclusions.

*See* Pet.'s Brief, p. 11 (Docket No. 15) ("At question is the reliability of the job information

provided by the vocational expert, and whether the ALJ documented adequate and substantial

persuasive evidence to support the expert's testimony.").

In general, an ALJ may not rely on a vocational expert's testimony regarding the

requirements of a particular job without first inquiring whether the testimony conflicts with the

DOT. *See Massachi v. Astrue*, 486 F.3d 1149, 1152-53 (9ᵗʰ Cir. 2007) (citing SSR 00-4p,

*available at* 2000 WL 1898704, *2 ("In making disability determinations, we rely primarily on

the DOT (including its companion publication, the SCO) for information about the requirements

of work in the national economy.")). In addition to the DOT, the ALJ may rely on the testimony

of vocational experts who testify about specific occupations that a claimant can perform in light

of her residual functional capacity. *See* 20 C.F.R. § 404.1560(b)(2); *see also Valentine v.

Comm'r Soc, Sec. Admin.*, 574 F.3d 685, 689 (9ᵗʰ Cir. 2009). SSR 00-4p provides the following

guidance regarding occupational evidence from a vocational expert in relation to information

included in the DOT:

> Occupational evidence provided by a V[ocational] E[xpert] or V[ocational]
> S[pecialist] generally should be consistent with the occupational information
> supplied by the DOT. When there is an apparent unresolved conflict between the VE
> or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for

**MEMORANDUM DECISION AND ORDER - 8**

the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled.  At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.  Neither the DOT nor the VE or VS evidence automatically "trumps" when there is a conflict.  The adjudicator must resolve the conflict by determining fi the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information.

SSR 004-p, *available at* 2000 WL 1898704, *2.

In making disability determinations, the ALJ may rely on the vocational expert testimony that contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation.  *See id.* (although evidence provided by vocational expert "generally should be consistent" with DOT, "[n]either the DOT nor the VE . . . evidence automatically 'trumps' when there is a conflict."); *see also Massachi*, 486 F.3d at 1153; Light *v. Social Sec. Admin.*, 119 F.3d 789, 793 (9th Cir. 1997) ("ALJ may rely on vocational expert testimony that contradicts the DOT, but only insofar as record contains persuasive evidence to support deviation).

Thus, the ALJ must first determine whether a conflict exists and, if so, the ALJ must then determine whether the VE's explanation for the conflict is reasonable and whether a basis exists for relying on the vocational expert rather than the DOT.  *See* SSR 004-p, *available at* 2000 WL 1898704, *2-3.  Only after determining whether the vocational expert has deviated from the DOT, and whether any deviation is reasonable, can an ALJ properly rely on the vocational expert's testimony as substantial evidence to support a disability determination.  *See Massachi*, 486 F.3d at 1152-54.  Evidence sufficient to support a deviation from the DOT may be either specific findings of fact regarding a claimant's ability to perform particular jobs, or inferences drawn from the context of the expert's testimony.  *See Johnson v. Shalala*, 60 F.3d 1428, 1435 n.7 (9th Cir. 1995) (ALJ provided sufficient support for deviation by noting that vocational expert

**MEMORANDUM DECISION AND ORDER - 9**

described characteristics and requirements of jobs in local area consistent with claimant's residual functional capacity); *Terry v. Sullivan*, 903 F.2d 1273, 1279 (9th Cir. 1990) (ALJ may infer support for deviation where vocational expert's understanding of applicable legal standards is clear from context).

Relevant here, the DOT *does not* address work situations requiring a sit/stand option.  To this end, district courts within the Ninth Circuit are split as to whether there is a conflict with vocational expert testimony where the DOT is silent on a job requirement – *i.e.*, a sit/stand option.  On the one hand, "[t]he majority of courts find that even though the DOT is silent as to this particular job requirement, a v[ocational] e[xpert]'s testimony that certain work can be performed by a claimant with a need for a sit/stand option is not inconsistent."  *Henderson v. Colvin*, 2016 WL 145571, *11 (E.D. Cal. 2016) (citing *Edwards v. Colvin*, 2015 WL 673441, *4 (E.D. Cal. 205); *Gilmour v. Colvin*, 2014 WL 3749458, *8 (E.D. Cal. 2014); *Forrest v. Comm'r Soc. Sec. Admin.*, 2014 WL 6185309, *4 (6th Cir. 2014) ("But the DOT does not discuss whether jobs have a sit/stand option . . . and therefore the vocational expert's testimony supplemented, rather than conflicted with, DOT job descriptions."); *Zblewski v. Astrue*, 302 Fed. Appx. 488, 494 (7th Cir. 2008) ("Because the DOT does not address the subject of sit/stand options, it is not apparent that the testimony conflicts with the DOT."); *Stain v. Colvin*, 2014 WL 2014 WL 2472312, *2 (C.D. Cal. 2014)); *see also Devore v. Comm'r of Soc. Sec.*, 2015 WL 3756328 (E.D. Cal. 2015); *Hirschy v. Comm'r of Soc. Sec.*, 2012 WL 996527 (E.D. Cal. 2012); *Harvey v. Astrue*, 2010 WL 2836817 (N.D. Cal. 2010).

On the other hand, several courts have emphatically found just the opposite to be true: that a vocational expert's testimony that jobs could be performed with a sit/stand option is inconsistent with the DOT's silence on the matter.  *See, e.g.*, *Clark v. Colvin*, 2015 WL 5601406,

**MEMORANDUM DECISION AND ORDER - 10**

*5 (E.D. Cal. 2015) ("[T]he weight of authority in this circuit clearly supports the proposition that a limitation that does not appear in the DOT cannot be included in the ALJ's hypothetical without explanation."); *McCabe v. Colvin*, 2015 WL 4740509, *12 (D. Nev. 2015) (finding apparent conflict presented by vocational expert testimony regarding jobs that will allow for sit/stand option when the DOT does not address sit/stand option); *Edwards v. Astrue*, 2013 WL 1891764, *9-10 (N.D.Cal. 2013) (same); *Valenzuela v. Astrue*, 2009 WL 1537876, *3 (N.D. Cal. 2009) (same); *Smith v. Astrue*, 2010 WL 5776060, *11-12 (N.D. Cal. 2010) (same).

The Ninth Circuit considered this issue in at least two unpublished decisions – *Coleman v. Astrue*, 423 Fed. Appx. 754 (9th Cir. 2011), and *Buckner-Larkin v. Astrue*, 450 Fed. Appx. 626 (9th Cir. 2011).  Although neither case is binding precedent, they have persuasive value nonetheless.  *See* 9th Cir. R. 36-3(b) (permitting citation to "[u]npublished dispositions and orders of this Court issued on or after January 1, 2007.").

In *Coleman*, the ALJ determined that the claimant had the residual functional capacity to perform sedentary or light work, provided that she could alternate between sitting, standing, and walking on an hourly basis.  *Coleman*, 423 Fed. Appx. at 756.  While many of the light and sedentary occupations would not accommodate a sit/stand/walk option, the vocational expert testified that the claimant could perform some of the occupations in those exertional categories. *See id*.  The Ninth Circuit panel concluded that the vocational expert's testimony created an "apparent conflict with the DOT."  *Id*.  Importantly, the ALJ did not ask the vocational expert about a conflict with the DOT and the vocational expert's testimony otherwise addressing the apparent conflict was brief and speculative.  *See id*. (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1043 (9th Cir. 2008) ("brief and indefinite testimony" is not "persuasive evidence" explaining

**MEMORANDUM DECISION AND ORDER - 11**

conflict).  Therefore, the Ninth Circuit remanded the action so that the ALJ could hear further testimony from the vocational expert and comply with SSR 00-4p.  *See id*.

Approximately six months later, in *Buckner-Larkin*, the claimant required an at-will sit/stand option.  *Buckner-Larkin*, 450 Fed. Appx. at 627.  The decision described that the vocational expert "noted that although the DOT does not discuss a sit-stand option, his determination was based on his own labor market surveys, experience, and research."  *Id*. at 628.  As the "conflict" was addressed and explained by the vocational expert and addressed in the ALJ's decision, the Ninth Circuit found that the vocational expert's apparently conflicting testimony was properly considered and the ALJ's determination was affirmed.  *See id*. at 628-29.

Here, even if assuming (without deciding) that there is a conflict when a vocational expert testifies that a person who requires a sit/stand option can perform work identified by the DOT,[2] the ALJ did not err in resolving that conflict in this instance.  On this point, the ALJ posed a hypothetical to Mr. Granat (including the sit/stand option) for the purposes of informing the issue of Petitioner's ability to perform past relevant work and/or alternative work:

ALJ:        So, any questions about the hypothetical?

VE:         No, Your Honor.

ALJ:        So, can you find any past work that would fit?

VE:         No.  Well, I think the past work has been a CNA, a bartender, and a bar manager, none of which are sedentary.

ALJ:        Could you tell me what the bartender was called in the DOT?

VE:         Sure, it is called a bartender.  It's a light, SVP 3, and it's 312.474-010.

---

[2]  Regardless, it should be noted that the ALJ himself understood that Mr. Granat's testimony at the April 10, 2013 hearing conflicted with the DOT.  *See* (AR 33) (discussed *infra*).

MEMORANDUM DECISION AND ORDER - 12

ALJ:       All right.  And could you find, if any, three sedentary, unskilled jobs that might fit in reduced numbers?

VE:        I think there are with the right upper extremity as kind of a helper hand, but used occasionally.  There's a position called a washroom operator which is sedentary, SVP 2, 529.665-014, with 650 in the region, and that region being Idaho and Utah, and 59,000 nationally.

           A second example is a position called a dowel inspector which is sedentary, SVP 2, 669.687-014, with 600 in the region and 47,000 nationally.  And then a third example would be position called a brimer and that brimer is a sedentary, SVP 2, 700.687-018, with 450 in the region and 46,000 nationally.  *And I'd reduce those numbers, Your Honor, by 50 percent.*

ALJ:       Fifteen?

VE:        Fifty; 50.

ALJ:       Sixty?

VE:        5-0.

ALJ:       Oh, I'm sorry.

VE:        Fifty.

ALJ:       I have the hardest time hearing fives, and my pen just went bad.  So turn the page to the next hypothetical, we will drop down to number 33.  This will be hypothetical number 2, the same as hypothetical 1, except 34 and 35 would be in place.  Would that rule out all jobs, in your opinion?

VE:        It would, Your Honor.

ALJ:       *So if we were to look at the DOT and other publications that describe these three jobs, would it mention the sit/stand option and all my other limitations?*

VE:        *It would not and so that part of my response is based on my experience and with that experience is the reason for reducing the numbers.*

**MEMORANDUM DECISION AND ORDER - 13**

| ALJ: | Okay.  Any questions, Mr. Decker [(Petitioner's attorney at the April 10, 2013 hearing)], for Mr. Granat? |
|---|---|
| ATT: | Your Honor, I think you went over the questions I would go over.  I don't have anything additional. |
| ALJ: | All right.  So, anything else come up or have we covered it? |
| CLMT: | No. |
| ALJ: | All right, good, I think we have.  So you'll get a decision within about 30 days at 1005 South 3rd Avenue and that'll be coming in the mail to you in one – |

(AR 86-88) (emphasis added).  In turn, the ALJ recounted this exchange in his April 26, 2013

decision, stating in relevant part:

> Although the vocational expert's testimony is inconsistent with the information contained in the Dictionary of Occupational Titles, there is a reasonable explanation for this discrepancy.  In the hearing, the vocational expert was asked if his testimony conflicted, in any way, with the Dictionary of Occupational Titles (DOT).  The expert responded by stating that the DOT does not mention, in its description of the above cited jobs, the limitations given (e.g., the sit/stand option) in the residual functional capacity.  However, the expert stated that his experience indicates that such jobs do allow for such limitations, in the reduced numbers noted above.  The expert's resume is found in the file.  No contrary evidence was presented.  Therefore, the opinions of the expert are accepted and found to be appropriate departures from the DOT (SSR 00-4p).

(AR 33-34).

From this, it is clear that the ALJ (1) not only asked Mr. Granat whether his testimony

conflicted with the DOT, but also (2) went on to elicit from Mr. Granat a reasonable explanation

for any such conflict (that, additionally, Petitioner's counsel did not challenge when provided the

opportunity to do so).  In short, Mr. Granat testified that the DOT does not comment on the

erosion of jobs based upon restrictions such as the sit/stand option and that his erosion figures (a

reduction by 50%) were based upon his understood professional opinion and experience.  Under

**MEMORANDUM DECISION AND ORDER - 14**

the circumstances presented by this case, this is enough.  *See, e.g.*, *Devore*, 2015 WL 3756328 at

*3-4 (vocational expert provided "reasonable explanation" for opinion that 10 percent available

cashier jobs could accommodate plaintiff's need for sit/stand option because vocational expert

testified that "erosion percentage [was] based upon the VE's professional opinion and not based

upon information in the DOT because the DOT does not comment on the erosion aspect of the

sit/stand option.").  The ALJ did not err in relying upon Mr. Granat's testimony that a sufficient

number of unskilled sedentary jobs (even after being reduced by 50%) existed in sufficient

numbers to accommodate Petitioner's age, education, work experience, and residual functional

capacity.

**C.      The ALJ Properly Considered Petitioner's Treating Physicians' Opinions**

The medical opinion of a treating physician is entitled to special consideration and

weight.  *See Rodriguez v. Bowen*, 876 F.2d 759, 761 (9th Cir. 1989).  Such deference is warranted

because the treating physician "is employed to cure and has a greater opportunity to know and

observe the individual."  *Id*.  However, a treating physician's opinion is not necessarily

conclusive.  *See id*. at 762.  If the treating physician's opinions are not contradicted by another

doctor, they may be rejected only for clear and convincing reasons.  *See Lester v. Chater*, 81

F.3d 821, 830 (9th Cir. 1995).  Even if the treating physician's opinions are contradicted by

another doctor, they can only be rejected if the ALJ provides specific and legitimate reasons,

supported by substantial evidence in the record, for doing so.  *See id*.  A lack of objective

medical findings, treatment notes, and rationale to support a treating physician's opinions is a

sufficient reason for rejecting that opinion.  *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th

Cir. 2001).

**MEMORANDUM DECISION AND ORDER - 15**

Petitioner argues that the ALJ failed to give proper weight to his treating physicians' opinions, including those from Dr. Andrew W. Thayne, M.D. and Dr. Jin Soofi, M.D. *See* Pet.'s Brief, pp. 16-20 (Docket No. 15). The Court addresses each of these arguments below.

    1.   <u>Dr. Thayne</u>

Dr. Thayne has treated Petitioner since December 8, 2004 and, on March 30, 2011, submitted a "Residual Functional Capacity Questionnaire." *See* (AR 581-582, 723). Therein, Dr. Thayne indicated that Petitioner suffered from "low back pain" and "right arm pain," with the following "functional limitations":

- Walking less than two city blocks;

- Sitting more than 30 minutes at a time for a total of four hours in an 8-hour workday;

- Standing/walking more than 30 minutes for a total of four hours in an 8-hour workday;

- Needing to shift positions and take unscheduled breaks;

- Frequently lifting/carrying less than 10 pounds, occasionally lifting/carrying 10-20 pounds, and never lifting 50 pounds or more; and

- Having handling/fingering limitations of approximately 50% in both arms and reaching limitations of less than 30% in her right arm and 30% in her left arm.

*See* (AR 581-582).[3] Ultimately, Dr. Thayne opined that Petitioner would miss more than four days of work each month, owing to her impairments. *See* (AR 582). On August 12, 2012, Dr.

---

[3] Though not expressly adopted by the ALJ, it is interesting to note that the majority of these limitations were nonetheless incorporated within the ALJ's residual functional capacity. *Compare* (AR 24-25) (*discussed supra*), *with* (AR 581-582). Actually, the ALJ found that Petitioner could sit, stand, and walk for *fewer* minutes at one time (but still, for a combined total of eight hours, like Dr. Thayne), and had *more than occasional* (defined as less than 1/3 of an 8-hour workday) reaching, handling, and fingering limitations (albeit only in Petitioner's right harm, not her left). *See id.*

**MEMORANDUM DECISION AND ORDER - 16**

Thayne submitted a second "Residual Functional Capacity Questionnaire."  *See* (AR 721-723).

This time, Dr. Thayne increased nearly every limitation outlined in his earlier questionnaire,[4]

while also concluding that Petitioner is incapable of working an 8-hour workday, five days a

week.  *See id*.

        Within his April 26, 2013 decision, the ALJ gave Dr. Thayne's opinions in these respects

"little weight," concluding that "[Dr.] Thayne's treatment notes do not support his physical

RFC."  (AR 30).  Petitioner takes issue with this finding, arguing that Dr. Thayne's "opinion is

not inconsistent with examination records and physical therapy records as documented prior,

and, accordingly, his opinion should [be] afforded more than the 'little weight' assigned by the

ALJ."  Pet.'s Brief, pp. 18-19 (Docket No. 15).  The Court's own review of the record (following

Petitioner's September 2009 back surgery) – especially from March 30, 2011 and August 12,

2012 (the time period in between Dr. Thayne's first and second "Residual Functional Capacity

Questionnaires") – supports the ALJ's decision to limit the import of these particular findings.

        First, to the extent Dr. Thayne definitively considered Petitioner disabled as of August

12, 2012, such an opinion on the ultimate issue here (at least as that term is used within the

meaning of the Social Security Act) is neither conclusive nor binding upon the ALJ.  *See*

*Rodriguez v. Bowen*, 876 F.2d 759, 761 (9th Cir. 1989); *see also* SSR 96-5p, *available at* 1996

WL 374183, *2 ("The regulations provide that the final responsibility for deciding [whether an

individual is 'disabled' under the Social Security Act] . . . is reserved to the Commissioner."); 20

C.F.R. §§ 404.1527(e)(1), 416.927(e)(1) ("We are responsible for making the determination or

_____

        [4]  Interestingly, Dr. Thayne *increased* the percentage of time during an 8-hour workday in
which Petitioner could reach (with her right arm) and handle, finger, and reach (with her left
arm).  *See* (AR 722).

**MEMORANDUM DECISION AND ORDER - 17**

decision about whether you meet the statutory definition of disability.").  Second, turning to Dr.

Thayne's treatment notes over time, they do not neatly align with the physical limitations he

ultimately assigns to Petitioner in the "Residual Functional Capacity Questionnaires."  It is true

that, at times, these notes indicate that Petitioner is grappling with arm/back pain, but that, by

itself,[5] is not at issue here; to be sure, the ALJ found in no uncertain terms that Petitioner's "right

elbow fracture with subsequent surgery and residuals" and "disorders of the back" to be "severe

impairments" to which Petitioner's residual functional capacity is negatively impacted.  *See*

*supra* (citing (AR 21-32).  But more to the point, in the years following her back surgery, the

majority of these notes speak to issues independent of Petitioner's allegedly-limiting pain and/or

functional capacity.  For example:

- 4/15/10:     Petitioner complains of headaches, sinus drainage, congestion, facial pain, and cough.  (AR 509) (examination reveals "no acute distress").

- 4/27/10:     Petitioner presents with issues about her hormone replacement therapy medications.  (AR 507) ("Everything else stable" . . . examination reveals "no acute distress" and "routine physical" as stable).

- 8/5/10:     Routine follow-up, noting "ongoing [physical therapy] for low back pain and treatment after surgery almost a near ago" and that "[s]he is doing better" and "[f]eels like she could go back to work, but probably not as bartender."  (AR 505) ("Everything else baseline" . . . examination reveals "no acute distress).

- 9/2/10:     Physical therapy notation concerning functional capacity evaluation history, with "client report[ing] difficulty with

---

[5] For the most part, these treatment notes simply reflect Petitioner's periodic subjective complaints of pain.  However, largely absent from such notes are any corresponding opinions or findings from Dr. Thayne (1) paralleling the opinions later reached (in the "Residual Functional Capacity Questionnaires") as to Petitioner's alleged functional limitations, or (2) quantifying in any degree Petitioner's pain statements and resultant limitations.  *See infra*.

**MEMORANDUM DECISION AND ORDER - 18**

> pushing, pulling, heavy lifting, bending, twisting, stooping, etc. She is limited with laundry and housecleaning and would like to return to sports and recreational activities but has been unable to do so." (AR431) (chief complaints listed as "low back pain at the paraspinals and illiac crest with bilateral lower extremities to the posterior legs with numbness.").

- 12/6/10:   Follow-up on "chronic back pain and depression" with Petitioner "[s]till having lots of pain." (AR 504) ("pain seems to be making her depression worse" but "[e]verything else baseline" . . . examination reveals "no acute distress," that "back – very tight with knot-like tightness in lower bil paraspinus muscles," and "lumbar back pain" as stable . . . "[p]ain and depression worsening, or at least no better.").

- 3/30/11:   Annual exam, with Petitioner reporting that "she is still having low back pain and feels depressed despite treatment," explaining further "that her pain symptoms have improved slightly, but that she still does not feel well enough to return to work as a bartender." (AR 598-599) ("At this visit, she is mainly concerned about her lack of sleep, as she is woken up every night by back pain and is unable to sleep more than 5-6 hours per night total" . . . examination is "[p]ositive for joint pain in R elbow and low back pain . . . numbness in R arm, no weakness" alongside observation that Petitioner "moves with discomfort, in no acute distress." "Routine physical" and "lumbar back pain" noted to be stable).

- 8/18/11:   Petitioner presents with urinary tract infection. (AR 630).

- 9/28/11:   Petitioner complains of issues with anxiety, thumb, and foot. (AR 628) (examination reveals no acute distress and "routine physical," and "lumbar back pain" as stable).

- 12/5/11:   Wellness exam and check up, with Petitioner indicating that she is struggling with depression and anxiety. (AR 666-667) ("Everything else fine" . . . examination reveals "no acute distress" and "routine physical" as stable).

- 12/14/11:  Cyst removal from inner proximal vaginal wall. (AR 664).

- 1/25/12:   Petitioner presents with right thumb pain. (AR 661) ("Has had R elbow injury and surgery and this may be ultimately affecting her thumb. Other issues are all baseline.").

**MEMORANDUM DECISION AND ORDER - 19**

- 2/15/12:   Petitioner presents for evaluation of possible hypoactive sexual desire disorder (decreased libido). (AR 660).

- 11/5/12:   Petitioner presents with possible pneumonia. (AR 916) ("Baseline issues are stable").

- 12/3/12:   Petitioner presents with wound on coccyx. (AR 915) ("Apparently injured area 10 days ago when hot tub jet hit area and it has opened up more and more.").

- 12/6/12:   Wellness exam and check up, with Petitioner indicating that she is struggling with depression and anxiety. (AR 913-914) ("Having ongoing peripheral neuropathy symptoms" but "[e]verything else fine" . . . "no acute distress" . . . "full [range of motion] of all joints, normal muscle strength in all major muscle groups, no scoliosis or spinal tenderness" and "lumbar back pain" and "routine physical" reported as stable).

Again, the point here is not to dispute that Petitioner has issues with her back and right arm that bring about pain responses; rather, it is to highlight that, nowhere in Dr. Thayne's historical treatment records of Petitioner is there any corroboration with the substantial limitations provided in his "Residual Functional Capacity Questionnaires." *See, e.g.*, (AR 670) (no reference to back/arm pain in Petitioner's temporary/historical "problem list" from 4/15/10 to 5/17/12).[6] This is what the ALJ meant when stating that "[Dr. Thayne's] treatment notes do not support his physical RFC." (AR 30). The undersigned agrees, finding that the ALJ provided clear and convincing reason for rejecting Dr. Thayne's opinions.[7] This is not to say that this

---

[6] This is particularly the case following Dr. Thayne's March 30, 2011 "Residual Functional Capacity Questionnaire" on March 30, 2011. That is, Dr. Thayne's treatment notes following March 30, 2011 do not explain the more limiting opinions expressed within his subsequent August 2, 2012 "Residual Functional Capacity Questionnaire."

[7] Additionally, Dr. Thayne's opinions are contradicted by examining physician, Dr. Kevin Hill, M.D. (AR 603-606). As such, the ALJ has also provided specific and legitimate reasons, supported by substantial evidence in the record, for rejecting Dr. Thayne's opinions.

**MEMORANDUM DECISION AND ORDER - 20**

Court conclusively finds Petitioner not to be disabled under the applicable rules and regulations; to be sure, Petitioner appropriately identifies conflicting evidence in support of her position. While such conflicting evidence may not have been as favorably received as Petitioner naturally hoped, it is clear that the ALJ's decision to question Dr. Thayne's disability opinion is not without appropriate reasons for doing so.  As required by controlling law, the ALJ will not be second-guessed in this respect.  *See Batson v. Comm'r of Social Security Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004) ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision.") (internal citations omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

   2.   Dr. Soofi

   Dr. Soofi began treating Petitioner on January 19, 2012 and, on August 14, 2012, submitted a "Mental Capacity Assessment."  *See* (AR 717-719, 760-763).  Therein, Dr. Soofi noted Petitioner's (1) extreme impairment in the ability to maintain attention and concentration for extended periods;[8] (2) extreme impairment in the ability to complete a normal workweek without interruptions from psychologically-based symptoms; (3) marked impairment in the ability to complete a normal workday without interruptions from psychologically-based symptoms; (4) marked impairment in the ability to perform at a consistent pace with a standard number and length of rest periods; (5) marked impairment in the ability to accept instructions

---

   [8]   Somewhat oddly, on the same day as the "Mental Capacity Assessment," Dr. Soofi's treatment notes indicate that "[Petitioner's] concentration and memory is *mildly diminished*, where she forgets appointments and throughout the day she gets distracted easily and forgetful." (AR 733) (emphasis added).

**MEMORANDUM DECISION AND ORDER - 21**

and respond appropriately to criticism from supervisors; and (6) marked impairment in the

ability to respond appropriately to changes in the work setting.  *See* (AR 717-719).

Within his April 26, 2013 decision, the ALJ lent "little weight" to these opinions, finding

in relevant part:

> Doctor Soofi's opinion of disability is inconsistent with his treatment notes showing
> she is improving as discussed above.  Doctor Thayne, her treating physician, reports
> the claimant's depression is stable.  Therefore, although Dr. Soofi is a treating doctor
> and his opinion could be given controlling weight, it is only given little weight as it
> is inconsistent with the great weight of the evidence.

(AR 31).  Petitioner disagrees, arguing that "the finding of these apparent inconsistencies

requires selective reading of Dr. Soofi's treatment records and a questionable interpretation of

Dr. Thayne's statements regarding [Petitioner's] condition" which do not constitute the requisite

"substantial evidence" that would provide "specific and legitimate reasons" for discounting Dr.

Soofi's opinions.  Pet.'s Brief, pp. 19-20 (Docket No. 15).  The Court's own review of the record

once again supports the ALJ's decision to question the weight of Dr. Soofi's "Mental Capacity

Assessment."

First, there is no dispute that the "Mental Capacity Assessment" was completed at a time

when Petitioner was not taking a full compliment of mood stabilizers, owing to perceived

adverse reactions up to that point.  But, once she did (at least to an extent) – after August 14,

2012 – her mental status improved.  *See, e.g.*, (AR 729) (10/22/12 treatment note indicating:

"However, since she had increased Cymbalta to 90 mg a day, *her depression seems to have*

*significantly improved* . . . .  She does not seem to be exhibiting any manic symptoms . . . .

Otherwise, her affect seems to be brighter, she is smiling more, she is still intermittently tearful,

but definitely less depressed . . . .  *[T]his woman has not been on mood stabilizer for most of her*

**MEMORANDUM DECISION AND ORDER - 22**

*life, so her bipolar disorder has not been too severe.*") (emphasis added); (AR 727) (11/26/12

treatment note indicating: "The patient states that her depression is better, but still 'having good

days and bad days.' . . . .  Her affect is intermittently tearful, but generally looks fairly bright.

*Her depression is much improved.*  No significant hopelessness or suicidal ideation.  No

psychotic symptoms.") (emphasis added); (AR 725) (1/23/13 treatment note indicating: "[S]he

appears to be brighter in affect, though she talks a lot about feeling like 'people do not

understand.'").  In other words, recognizing Petitioner's improving mental status over time,

reveals that Dr. Soofi's earlier "Mental Capacity Assessment" does not paint an entirely accurate

picture of Petitioner's condition.  To be clear, Petitioner still suffers from depression and bipolar

disorder with corresponding limitations (just as the ALJ found in his disability determination),

but Dr. Soofi's "Mental Capacity Assessment" is not corroborated by the entire balance of his

treatment notes.[9]

Second, Dr. Soofi's findings are not universally shared.  For example, following a May

19, 2011 psychological consultative examination, Nels M. Sather, Ph.D., concluded:

> Ms. King's prognosis is fair to good.  She has mild symptoms of depression related
> to her medical problems (i.e., surgeries, right arm limitations, etc.).  Her symptoms
> include insomnia, lack of motivation, and loss of interest in some favorite activities.
> She has a history of depressive episodes that she was able to overcome.  Her mild
> depression is treatable and it is recommended that she seek outpatient therapy.
> Treatment is likely to take less than a year and she should continue her

---

[9]  Petitioner's criticism of the ALJ's references to Dr. Thayne's mention of her
depression as "stable" miss the point.  *See* Pet.'s Brief, p. 19 (Docket No.15) ("Regarding
support in treatment records for Dr. Soofi's opinion evidence, the ALJ mentions on multiple
occasions that Ms. King's depression was referred to as "stable" by Dr. Thayne, seeming to take
the term "stable" as a synonym for "asymptomatic" or "improved.").  There simply is no basis
from which to conclude that such references – as ambiguous as they might be – operate to
support a finding of disability in this instance.

**MEMORANDUM DECISION AND ORDER - 23**

antidepressant medication.  She is an engaging, social person and she should be able to find employment that capitalizes on her strengths. . . . .

Ms. King is a 42-year-old female who has a history of mild depression in response to identifiable stressors.  She is prescribed an antidepressant and she would benefit from outpatient therapy.  She has good ability to understand instructions.  Her memory is intact.  She is able to sustain attention concentration.  Her persistence is limited by her physical problems.  She is adaptable and she can engage in social relationships.

(AR 613).  Similarly, in a January 20, 2011 psychiatric review, Michael J. Dennis, Ph.D., found

no restriction of activities of daily living, no difficulties in maintaining social functioning, no

difficulties in maintaining concentration/persistence/pace, and no repeated episodes of

decompensation of any extended duration.  *See* (AR 94); *see also* (AR 95) ("[Petitioner] is

independent/active in [activities of daily living], drives/shops, handles finances and is socially

active/lunches.  Says can pay attention as long as needed and follows instructions very well;

completes what she starts.  No evidence of severe psych impairment based on level of

functioning and objective findings.").  On June 3, 2011, Mack Stephenson, Ph.D., affirmed Dr.

Dennis's initial determination, except finding a mild restriction of activities of daily living.  *See*

(AR 108).

      With all this in mind, there is no question that Petitioner suffers from several impairments

(acknowledged as "severe" by the ALJ) that no doubt impact her ability to work; however, it

cannot be said that the ALJ failed to provide specific legitimate reasons for rejecting Dr.

Thayne's and Dr. Soofi's opinions.  While these physicians' assessments may not have been

given the weight Petitioner would have preferred, they nonetheless were considered in the

context of the surrounding medical record.

**MEMORANDUM DECISION AND ORDER - 24**

In this setting, the Court's duty is not to resolve the conflicting opinions and ultimately decide whether Petitioner is once-and-for-all disabled as that term is used within the Social Security regulations. Rather, this Court is tasked with determining whether the ALJ's decision that Petitioner is not disabled is supported by the record. With this backdrop, given the inconsistent treatment notes and conflicting medical opinions, the ALJ's handling of Dr. Thayne's and Dr. Soofi's opinions is supported by clear and convincing/specific and legitimate reasons for doing so. Because the evidence can reasonably support the ALJ's conclusions in these respects, this court will not substitute its judgment for that of the ALJ's. *See Richardson*, 402 U.S. at 401; *Matney*, 981 F.2d at 1019.

## IV. CONCLUSION

The ALJ is the fact-finder and is solely responsible for weighing and drawing inferences from facts and determining credibility. *See Allen*, 749 F.2d at 579; *Vincent ex. Rel. Vincent*, 739 F.2d at 1394; *Sample*, 694 F.2d at 642. If the evidence is susceptible to more than one rational interpretation, one of which is the ALJ's, a reviewing court may not substitute its own interpretation for that of the ALJ. *Key*, 754 F.2d at 1549.

I am of the opinion that the evidence upon which the ALJ relied can reasonably and rationally support his well-formed conclusions, despite the fact that such evidence may be susceptible to a different interpretation. Accordingly, the ALJ's decisions as to Petitioner's disability claim were based on proper legal standards and supported by substantial evidence.

///

///

///


**MEMORANDUM DECISION AND ORDER - 25**

## V. ORDER

Based on the foregoing, the decision of the Commissioner is AFFIRMED and this action is DISMISSED in its entirety with prejudice.

DATED:  **March 28, 2016**

Honorable Ronald E. Bush
Chief U. S. Magistrate Judge